[Cite as *Fuller v. Univ. Hosps. Med. Group, Inc.*, 2021-Ohio-2518.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

BURRELL FULLER, ET AL.,　　　　　:

　　　Plaintiffs-Appellants,　　　:

　　　　　　　　　　　　　　　　　　　　No. 109973

　　　v.　　　　　　　　　　　　:

UNIVERSITY HOSPITALS MEDICAL
GROUP, INC., ET AL.,　　　　　　:

　　　Defendants-Appellees.　　　:

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 22, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-891878

---

### *Appearances:*

James S. Wertheim, L.L.C., and James S. Wertheim, *for appellants.*

Tucker Ellis L.L.P., Karl A. Bekeny, Michael J. Ruttinger, and Chelsea M. Croy Smith, *for appellees.*

LARRY A. JONES, SR., J.:

{¶ 1}  Plaintiffs-appellants, Burrell Fuller ("Fuller") and Pomerantz and Crosby Co., L.P.A. ("the law firm"), appeal from the trial court's decision granting summary judgment in favor of defendants-appellees, University Hospitals Medical

Group, Inc. and University Hospitals Physician Services, Inc. (collectively "University Hospitals" or "the hospital"). For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} Fuller and the law firm initiated this class action against University Hospitals, alleging that the hospital overcharged the law firm, in violation of R.C. 3701.741, for copies of Fuller's medical billing the law firm requested. The law firm was representing Fuller in an automobile accident personal-injury case and sought the billing records for medical treatment he obtained at the hospital as a result of the accident. The hospital charged the firm $78.78 for three pages of billing records. The records were from the three medical departments that treated Fuller at the hospital on the day of the accident — the emergency department, the cardiology department, and the radiology department. Fuller was discharged the same day he was treated and had not been back to a University Hospitals facility or seen a University Hospitals doctor since that time.

{¶ 3} In addition to their individual claims against the hospital, Fuller and the law firm sought class-action certification for two different classes: an "overcharge class" and a Consumer Sales Practices Act class ("CSPA class"). Both proposed classes consisted of "all persons" who received treatment from University Hospitals, requested copies of "medical records" through an authorized representative, and received and paid a demand amount for payment prior to obtaining the records.

**{¶ 4}** The hospital filed a motion to dismiss that the trial court denied. The parties then engaged in discovery, at the conclusion of which the hospital filed a motion for summary judgment. Fuller and the law firm filed a motion for certification of both proposed classes. The trial court held a hearing on the parties' motions, and thereafter issued its judgment granting University Hospitals' motion for summary judgment and finding Fuller and the law firm's motion for class-action certification "moot." Fuller and the law firm now appeal, raising the following two assignments of error for our review:

> I. The trial court erred when it granted appellees' motion for summary judgment.
>
> II. The trial court erred when it denied class certification.

## Law and Analysis

**{¶ 5}** In its first assignment of error, Fuller and the law firm contend that the trial court erred by granting summary judgment in favor of the hospital.

## Summary Judgment Standard of Review

**{¶ 6}** Appellate review of a summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We employ the same standard as the trial court, without deference to it. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989). A motion for summary judgment may be granted only when it is demonstrated (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the

motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 7} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984); Civ.R. 56(E). A "material" fact is one that would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**University Hospitals' Summary Judgment Motion**

{¶ 8} The hospital relied on numerous documentary evidence in support of its summary judgment motion, including (1) Fuller's deposition testimony; (2) the affidavit and deposition testimony of Christopher Smith ("Smith"), who was employed by University Hospitals Health System, Inc. as Manager of Revenue Cycle Customer Service Department, and was responsible for processing requests for copies of University Hospitals Medical Group, Inc. ("UHMG") itemized billing

statements and other billing records; (3) the deposition testimony of Gloria Chiabai ("Chiabai"), a representative from the law firm who requested the subject records; (4) two letters from the law firm to the hospital, one requesting billing records for Fuller and the other requesting Fuller's medical records; (5) a document titled "Finger on the Pulse:  2017 Reimbursement Rates for Copies of Medical and Billing Records Including Rates for Electronic Copies" ("Finger on the Pulse"); (6) a letter from the hospital requesting $78.78 for the billing records; (7) a letter from the law firm contesting the charge; (8) the deposition of an attorney from the law firm; and (9) the transcription of a call between Chiabai and a customer service representative from the hospital.

{¶ 9}   With the above-mentioned documentation, the hospital established that when it receives a third-party request for an itemized billing statement, it invoices the third-party requestor the amount set forth in the "Finger on the Pulse" newsletters prepared by the hospital's law department.  The total amount reflects two components:  a research fee and a copy fee.

{¶ 10} At the relevant time, the research fee was a $25 flat fee for each medical group that billed for treatment of a patient.  Smith averred that the fee was for the "labor costs associated with the search and retrieval of the requested billing information in the financial accounting software and the compilation of that information into the requested itemized billing statement."  Smith explained that an additional $1.26 copy fee for billing statements was charged.  Thus, the hospital billed the law firm a research fee of $25 for each of the departments that treated

him (i.e., the emergency, cardiology, and radiology departments), and $1.26 for each page produced by the departments (each department produced one page).

{¶ 11} These charges were explained to Chiabai when she called the hospital's customer service line to seek clarification. Chiabai did not challenge the charges, and thereafter the law firm paid the charges in full. Chiabai testified that an itemized billing statement is a specialized document required by liability insurers for purposes of documenting payment for health care services; they are a routine component of personal-injury litigation, and she routinely requests them for the law firm's cases.

{¶ 12} Chiabai admitted that billing statements are not the same as medical records, however. Chiabai testified that when she submits requests to hospital systems on behalf of the law firm, she submits separate requests for the itemized billing and the medical records. The record shows that that is what happened in this case: the law firm sent two separate requests to University Hospitals regarding Fuller, one for the billing records and one for the medical records.

{¶ 13} Smith elaborated on the distinction between billing records and medical records. Specifically, unlike medical records, "[b]illing records are created after the related treatment provided to a patient is complete and are used solely for purposes of obtaining payment for that treatment." Itemized billing statements are "created from information stored in * * * financial accounting software" and summarize "the amount charged, any adjustments to that amount, the amount actually paid, and any outstanding balance." The Revenue Cycle Customer Service

department that oversees creation of itemized billing statements, "rarely speaks with UHMG medical professionals and only regarding billing related issues." It has "no involvement in the care and treatment of patients." As such, "[b]illing records are not used by UHMG physicians or other medical professionals as part of the care and treatment of patients."

{¶ 14} Smith explained that when University Hospitals receives a request for an itemized billing statement, an employee must first "[f]ind those accounts that are associated with the billing records that are being requested." Creation of an itemized billing statement requires an employee of the Revenue Cycle Customer Service Department to use the department's financial accounting software to pull billing records from each different University Hospitals practice group that treated a patient. Smith further explained that the system in use at the time of the law firm's request would not simply show all Fuller's records from just inputting his name; an employee had to search individually for records from each of the three groups that treated him. After the records from the three departments were searched, a new document, consisting of three pages, was created as Fuller's itemized billing statement. That document did not previously exist in the hospital's databases.

**Fuller and the Law Firm's Opposition**

{¶ 15} In opposition to the hospital's motion for summary judgment, Fuller and the law firm relied on the deposition testimony of one of the firm's attorneys and Smith's deposition testimony. The attorney testified that Fuller signed a

"Authorization for Release of Medical Information" ("the authorization") when requesting his records. According to the deposition testimony of both the attorney and Smith, the authorization is the same regardless of which University Hospitals facility or doctor performs the service or what records are requested. Fuller and the law firm contended that the use of the authorization for both billing and medical records demonstrated that billing records are medical records subject to the price requirements of R.C. 3701.741.

**R.C. 3701.741**

{¶ 16} R.C. 3701.741 governs the maximum allowable fees for providing copies of medical records, and provides in relevant part as follows:

> (A) Each health care provider and medical records company shall provide copies of medical records in accordance with this section.
>
> (B) Except as provided in divisions (C) and (E) of this section, a health care provider or medical records company that receives a request for a copy of a patient's medical record shall charge not more than the amounts set forth in this section.
>
> * * *
>
> (2) If the request is made other than by the patient or the patient's personal representative,[1] total costs for copies and all services related to those copies shall not exceed the sum of the following:
>
> (a) An initial fee of sixteen dollars and eighty-four cents adjusted in accordance with section 3701.742 of the Revised Code, which shall compensate for the records search[.]

---

[1] A patient's personal representative is "a minor patient's parent or other person acting in loco parentis, a court-appointed guardian, or a person with durable power of attorney for health care for a patient, the executor or administrator of the patient's estate, or the person responsible for the patient's estate if it is not to be probated." R.C. 3701.74(A)(11).

{¶ 17} R.C. 3701.74(A)(8) defines a medical record as "data in any form that pertains to a patient's medical history, diagnosis, prognosis, or medical condition and that is generated and maintained by a health care provider in the process of the patient's health care treatment."

{¶ 18} Fuller and the law firm cite the Ohio Supreme Court's decision in *Griffith v. Aultman Hosp.*, 146 Ohio St.3d 196, 2016-Ohio-1138, 54 N.E.3d 1196, in support of their contention that billing records are medical records. We find *Griffith* distinguishable from this case.

{¶ 19} In *Griffith*, the plaintiff's deceased father had been a patient at Aultman Hospital. The decedent had surgery and was initially in the intensive care unit; he was then transferred to a step-down unit and placed on cardiac monitoring. A nurse in the step-down unit checked on the decedent around 4:00 a.m. and found he was doing well. Approximately 45 minutes later, an x-ray technician found the decedent in his bed with his gown ripped off, the cardiac monitor no longer attached to his body, his central line lying on the floor, and his chest tube disconnected. The patient was unresponsive and did not have a heartbeat. He was resuscitated and put on life support. However, he had suffered severe brain damage and showed no signs of neurological improvement; his family removed him from life support and he passed away shortly thereafter.

{¶ 20} The decedent's daughter requested her father's medical record from the hospital. The hospital produced the medical record as it existed in the medical-records department. The record did not contain any of the monitoring strips from

the cardiac monitor. Thus, the daughter filed an action under R.C. 3701.74 and 2317.48 to compel the production of her father's complete medical record. According to the hospital, the cardiac monitor records were not part of the decedent's records because the nursing staff had not provided them to the medical-records department.

{¶ 21} A representative from the hospital testified that documentation about the monitoring strips was printed from the decedent's cardiac monitor by a nurse after his death at the request of the hospital's risk-management department. According to the representative, a patient's data from a cardiac monitor is saved for 24 hours after the patient's discharge, after which it is deleted unless otherwise ordered.

{¶ 22} The court considered the definition of medical record under R.C. 3701.74, and concluded the following:

> because the Ohio General Assembly did not limit the definition of "medical record" in R.C. 3701.74(A)(8) to data in the medical-records department, the physical location of the data is not relevant to the determination whether the data qualifies as a medical record. Instead, the focus is whether a healthcare provider made a decision to keep data that was generated in the process of the patient's healthcare treatment and pertains to the patient's medical history, diagnosis, prognosis, or medical condition. We hold that for purposes of R.C. 3701.74(A)(8), "maintain" means that the healthcare provider has made a decision to keep or preserve the data.

*Id.* at ¶ 2.

{¶ 23} Thus, the holding in *Griffith* relates to the "maintain" portion of R.C. 3701.74(A)(8). Our concern in this case, however, is whether the billing records

were "*generated* * * * by a health care provider in the process of the patient's health care treatment" as contemplated under the statute. (Emphasis added.) Thus, *Griffith* is distinguishable from the issue in this case.

{¶ 24} Construing the evidence most strongly in favor of Fuller and the law firm as we are required to do, it demonstrates that an itemized billing statement is not the same as a medical record. Requests for itemized billing statements and medical records are usually separately made, and a billing record does not pertain "to a patient's medical history, diagnosis, prognosis, or medical condition." R.C. 3701.74(A)(8). Rather, it is the record that insurance companies require to document payment for healthcare services.

{¶ 25} Further, a billing record is not "generated and maintained by the health care provider in the process of the patient's health care treatment." *Id.* As Smith explained, the process for generating itemized billing records requires an employee to use the Revenue Cycle department's financial accounting software to pull billing records from each different practice group that treated a patient. Thus, in this case, someone had to individually search for records from each of the three groups that treated Fuller, that is, from the emergency, cardiology, and radiology departments. The person completing the law firm's itemized billing statement request had to search records from the three different groups, individually access Fuller's records within those groups, and then physically print the "itemized bills," which "detail the specific charges for the services provided."

{¶ 26} Thus, a new document — a three-page itemized billing statement — which had not previously existed anywhere in University Hospitals' databases was created. As Smith averred in his affidavit, "[b]illing records are created after the related treatment provided to a patient is complete and are used solely for purposes of obtaining payment for that treatment. Billing records are not used by UHMG physicians or other medical professionals as part of the care and treatment of patients."

{¶ 27} In light of the above, billing records are not medical records and therefore are not subject to the pricing requirements of R.C. 3701.741. The first assignment of error is overruled.

**Class Certification**

{¶ 28} For their second assigned error, Fuller and the law firm contend that the trial court erred in denying them class certification. We disagree.

{¶ 29} Fuller and the law firm's claims were dismissed by the trial court vitiating any standing they would have to bring claims on behalf of others because the court determined that the plaintiffs had no case or controversy for which they could raise claims. Therefore, based on the dismissal of Fuller and the law firm's individual claims, the class claims have been mooted because they cannot proceed with Fuller and the law firm as their representative. *FV-I, Inc. v. Townsend-Young*, 8th Dist. Cuyahoga No. 109191, 2020-Ohio-5184, ¶ 74, citing *Brunet v. Columbus*, 1 F.3d 390, 399 (6th Cir.1993) ("Where * * * the named plaintiff's claim becomes moot before certification, dismissal of the action is required.").

{¶ 30} In light of the above, the second assignment of error is overruled.

## Conclusion

{¶ 31} The statutory definition of "medical record" contains two separate, but equally necessary, components: a medical record is a document that "pertains to a patient's medical history, diagnosis, prognosis, or medical condition" and a document "that is generated and received for filing maintained by a healthcare provider in the process of the patient's health care treatment." R.C. 3701.74(A)(8). An itemized billing statement is not a medical record within the meaning of R.C. 3701.741, and the trial court properly granted the hospital's motion for summary judgment. Further, the trial court properly dismissed the class claims as moot.

{¶ 32} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR