[Cite as *Stewart v. Farmers Ins. of Columbus, Inc.*, 2026-Ohio-1451.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JAMES STEWART, INDIVIDUALLY   :
AND ON BEHALF OF ALL OTHER
SIMILARLY SITUATED,   :

     Plaintiff-Appellee,   :

                              No. 115049

     v.   :

FARMERS INSURANCE OF   :
COLUMBUS, INC.,

                        :

     Defendant-Appellant.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** April 23, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-981091

---

### *Appearances:*

Dworken & Bernstein Co., LPA, and Patrick J. Perrotti;
Garson Johnson LLC, and James A. DeRoche, *for
appellee*.

Tucker Ellis LLP, Karl A. Bekeny, Benjamin C. Sasse, and
Ariana E. Bernard; Akerman LLP, and Bryan T. West, pro
hac vice, *for appellant*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1}    Appellant Farmers Insurance of Columbus, Inc. ("Farmers") appeals the judgment of the trial court granting class certification. Finding merit to the appeal, this court reverses the trial court's decision.

## I.   Procedural and Factual Background

{¶ 2}    In 2022, Farmers issued a car insurance policy ("the policy") to James Stewart insuring his 2008 Honda Element that he purchased in 2016 for "around" $12,000. The relevant portions of the policy, which are not in dispute, are as follows:

> **Part IV – Damage to Your Car**
>
> . . .
>
> **Coverage G – Collision**
>
> [Farmers] will pay for **loss** to **your insured car** caused by **collision** less any applicable deductibles.
>
> . . .
>
> **Limits of Liability**
>
> [Farmers'] limits of liability for **loss** shall not exceed:
>
> 1. The amount which it would cost to repair or replace the damaged or stolen property with other or like kind and quality; or with new property less an adjustment for physical deterioration and/or depreciation.[1]

---

[1] The policy originally stated that Farmers' limits of liability would not exceed the lowest of "1. The actual cash value of the stolen or damaged property. 2. The amount necessary to repair or replace the property."

The policy was amended by an endorsement, (OH013-1st Edition — 94-1085 1st Edition 10-08) replacing number 2 with a new provision.

**Payment of Loss**

[Farmers] may pay the **loss** in money or repair or replace damaged or stolen property.

. . .

**Appraisal**

[Policy holder] or [Farmers] may demand appraisal of the loss. Each will appoint and pay a competent and disinterested appraiser and will equally share other appraisal expenses. The appraisers, or a judge of a court having jurisdiction, will select an umpire to decide any differences. Each appraiser will state separately the actual cash value and the amount of loss. An award in writing by any two appraisers will determine the amount payable, which shall be binding on the parties.

(Emphasis in original.)

{¶ 3} In December 2022, while the policy was in effect, Stewart was involved in an automobile accident. Farmers declared the vehicle a total loss and pursuant to the policy, elected to pay Stewart for the loss in money, as opposed to repairing or replacing the damaged vehicle. In January 2023, Farmers paid Stewart $9,795, which represented the adjusted vehicle value of $10,295 plus fees, but minus Stewart's $500 deductible. According to the record, Stewart did not, at the time, dispute the payment or invoke the appraisal process under the policy.

{¶ 4} In June 2023, Stewart filed a class-action complaint against Farmers, asserting claims individually and as representative of a class of insureds by Farmers

---

The policy was again amended by an endorsement (J6712-1st Edition — 93-6712 1st Edition 10-08) by deleting the entirety of the "Limits of Liability" provision and replacing it with the above-cited relevant language.

In Stewart's motion for class certification, Stewart acknowledges this endorsement as the relevant provision for "Limits of Liability." *See* Motion for Class Certification, page 4; Docket No. 46.

who suffered total losses of their vehicles. The alleged claims included (1) breach of contract; (2) unjust enrichment; and (3) fraud and fraudulent/negligent misrepresentation and omission. The underlying class issue Stewart raised was whether Farmers breached its policies for each insured by applying a "condition adjustment" not mentioned in the policy and is otherwise contrary to law. According to Stewart and the putative class, Farmers breached the insurance contracts by not paying the insureds "actual cash value" for their total-loss vehicles. According to Stewart, "actual cash value" was not defined in the policy nor did the policy explain how Farmers calculated "actual cash value."[2]

{¶ 5} Stewart alleged that Farmers also breached the policy by using a third-party company, CCC Intelligent Solutions ("CCC"), to reduce the payment to him and the putative class by subtracting an arbitrary "condition adjustment" from the actual cost of the comparable vehicles used to determine the actual cash value.

---

[2] According to Stewart, ACV means the "actual cost to buy a comparable car less any applicable deductible amount contained in the policy." Adm.Code 3901-1-54(H)(7). The full provision of the cited portion of Adm.Code. 3901-1-54(H)(7) states, in relevant part:

> In settlement of claimants' automobile total losses on the basis of actual cash value or replacement of the automobile with another of like kind and quality, an insurer which elects to offer a cash settlement to claimant shall base the offer upon the actual cost to purchase a comparable automobile less any applicable deductible amount contained in the policy, and/or deduction for betterment as contained in paragraph (H)(2) of this rule.

The code section then sets forth how that settlement value may be derived from, including the average costs of two or more comparable vehicles, average of two or more quotes from licensed dealers, or cost as determined from a generally recognized used motor vehicle source such as an electronic database or guidebook. *See* Adm.Code. 3901-1-54(H)(7)(a-e).

According to Stewart, this practice is not disclosed in the policy and Farmers fraudulently concealed it from policyholders.

**{¶ 6}** The complaint set forth the following class definition:

> All Ohio residents who: 1) were insured by Defendant under a motor vehicle policy providing coverage for Damage to Your Car, or similar; 2) suffered damage to their auto determined to be a total loss, made a claim to Defendant, and Defendant made payment claimed to be the actual cash value of the vehicle; 3) the payment was in the amount of the TOTAL on a CCC One® Market Valuation Report, or less applicable deductible; or was the result of any other similar process applying a deduction not provided for in the Policy. *The class excludes any insured whose payment was made based on an appraisal*; Plaintiff's counsel; officers of the court handling this matter; and employees of Defendant. The class period is 15 years before the filing of this action, and thereafter.

(Emphasis added.)

**{¶ 7}** After the complaint was filed and in accordance with the policy, Farmers made an appraisal demand, which resulted in Farmers formally filing a motion to compel appraisal. The appraisal process provided: "Each appraiser will state separately the *actual cash value* and the amount of loss. An award in writing by any two appraisers will determine the amount payable, which shall be *binding* on the parties." (Emphasis added.) Accordingly, the appraisers would determine the "actual cash value" of Stewart's vehicle.

**{¶ 8}** Ultimately, in December 2023, the trial court granted Farmers' August 2023 motion to compel appraisal of the claim. The trial court concluded, after relying on and applying the criteria in *Saba v. Homeland Ins. Co.*, 159 Ohio St. 237 (1953), that the Policy language contained "plain, inescapable language" that the

appraisal provision was mandatory.  Moreover, relying on *Bobel v. Safeco Ins. Co. of Indiana*, 2018 US Dist. LEXIS 240663 (N.D. Ohio May 10, 2018), the court found no merit to Stewart's argument that the appraisal provision did not apply if a lawsuit was already filed.  The court stated, "As in *Bobel*, there is no language in the Farmers policy precluding appraisal after the commencement of litigation."  Finally, despite Stewart challenging the appraisal because it would not resolve the legal issue before the court, the trial court ordered Stewart to submit to the appraisal process as invoked by Farmers.

{¶ 9}  In March 2024, following discovery and while the parties waited for the appraisal, Stewart moved for class certification, amending the class as defined in the complaint by removing the exclusion of appraisal-based claims, adding a reference to "condition adjustments," and shortening the class period.  Stewart's new class definition provided:

> All Ohio residents who:  1) were insured by Defendant under a motor vehicle policy; 2) suffered damage to their auto declared a total loss by Defendant, and Defendant made a cash payment to resolve the claim on or after June 16, 2017; 3) the payment was derived using a CCC One® Market Valuation Report that applied a "condition adjustment" reducing the comparable vehicle value.  The class excludes Plaintiff's counsel; officers of the court handling this matter; and employees of Defendant.

{¶ 10} Stewart stated that the common question was whether Farmers breached its policies for each person by applying a "condition adjustment" not mentioned in the Policy and is otherwise contrary to law.  According to Stewart, CCC reduced payments to all class members by subtracting an arbitrary amount termed

a "condition adjustment" from the actual cost of the comparable vehicles used to determine the actual cash value owed to all class members pursuant to the members' respective policies. He maintained that class certification was warranted because it would efficiently address the merits of the dispute in one action for all Ohioans harmed by Farmers' alleged conduct.

{¶ 11} In April 2024, the appraisal was completed. In accordance with the appraisal provision, the two appraisers jointly issued an award finding the "actual cash value" for Stewart's vehicle to be $11,564.08, which was higher than the amount Farmers originally paid Stewart. Farmers issued a check payable to Stewart for $1,393.29, representing the difference between the original amount and the appraisal award. Stewart declined to cash the check and continued the litigation without amending the complaint. Notably, this subsequent payment was also higher than the complained-about "condition adjustment" applied to the comparable vehicles in assessing Stewart's total loss. Stewart did not move to set aside the appraisal award.

{¶ 12} Because the appraisal had been completed and Farmers tendered the check to Stewart for the difference, Farmers opposed Stewart's motion for class certification, contending that Stewart lacked standing as a class representative or his claims were otherwise moot because he was fully compensated following the policy's binding appraisal process, which was also mandated by the court. Because it complied with the contract by promptly paying the appraisal award, Farmers contended that Stewart's extra-contractual claims — unjust enrichment, negligent

misrepresentation, and fraud — are not viable claims to maintain a class action. Moreover, it further opposed class certification because Stewart improperly broadened the class definition without leave of court. Finally, Farmers contended that Stewart could not satisfy the Civ.R. 23 requirements because of the onerous review of individual claim files.

{¶ 13} Stewart opposed Farmers' assertion that he lacked standing or that his claims were otherwise moot by virtue of the appraisal. He characterized the appraisal process as a "gambit," citing to case law that portrays this tactic as "efforts to 'pick off' claims of the named plaintiff." In support, Stewart cited to *Hoban v. Natl. City Bank*, 2004-Ohio-6115, ¶ 23 (8th Dist.), in which this court held that individual and class claims will not be mooted where the defendant's conduct did not afford the plaintiff a reasonable opportunity to file a motion for class certification prior to tendering plaintiff the relief sought.

{¶ 14} The trial court agreed with Stewart. The court found that invoking the policy's appraisal process did not moot Stewart's standing to maintain the class action. Relying on this court's decision in *Hoban*, the trial court stated that "the facts of this case make clear that this is a dispute that is capable of repetition and could forever evade review by invoking the appraisal provision." The court also found it significant that Stewart did not cash or accept the tendered check following the court-ordered and contractually binding appraisal. Accordingly, the trial court found that despite the appraisal process, Stewart had "standing to bring his claim."

{¶ 15} Further, the court found that Stewart satisfied the Civ.R. 23 requirements and certified the following proposed class:

> All Ohio residents who: 1) are or were insured by Defendant under a motor vehicle policy; 2) suffered damage to their auto declared a total loss by Defendant, and 3) received a cash payment to resolve the claim on or after June 16, 2017; 4) the payment was derived using a CCC One® Market Valuation Report that applied a "condition adjustment" reducing the comparable vehicle value. The class excludes Plaintiff's counsel; officers of the court handling this matter; and employees of Defendant.[3]

{¶ 16} This appeal followed.

## II. The Appeal

{¶ 17} In its sole assignment of error, Farmers contends that the trial court erred in granting class certification, raising the following issues:

> (1) Whether Stewart's individual and class claims are moot because (a) the valuation of his total-loss car was fully resolved in a court-ordered appraisal; and (b) he alleges no other injury and cannot move to certify a class on an unstated liability theory that would include him as a class member;
>
> (2) Whether Stewart satisfied the requirements of Civ.R. 23(A) by showing a properly defined class, typicality, and commonality; and
>
> (3) Whether Stewart satisfied the predominance test of Civ.R. 23(B)(3).

---

3 When the court reviewed the language of the policy, it did not cite or quote the subsequent endorsements to the policy that amended Farmers' limits of liability, but rather relied on the policy's original language that stated that Farmers' liability "shall not exceed the lowest of: 1. The actual cash value of the stolen or damaged property. 2. The amount necessary to repair or replace the property." Again, the policy was amended, deleting Farmers' contractual obligation to pay the undefined term of "actual cash value."

## A. Are the Individual and Class Claims Moot?

{¶ 18} We review the issue of mootness de novo because it is a question of law. *Biesiada v. City of N. Royalton Mayor*, 2024-Ohio-965, ¶ 10 (8th Dist.). Under the de novo standard, "'this court conducts an independent review of the trial court's decision, giving no deference to the trial court's determination.'" *Id.*, quoting *Jacobson v. Akron Children's Hosp.*, 2023-Ohio-2225, ¶ 53 (9th Dist.).

{¶ 19} Farmers first contends that Stewart's individual claim is moot and thus he cannot seek class relief. It maintains that Stewart's individual and class claims are moot because (a) the valuation of his total-loss car was fully resolved in a contractual and court-ordered appraisal; and (b) Stewart alleged no other injury and cannot move to certify a class on an unstated liability theory that would include him as a class member.

{¶ 20} It is undisputed that when Stewart filed his complaint, he had standing to bring his individual claims and as the class representative. "If a plaintiff possesses standing from the start, later factual changes cannot deprive the plaintiff of standing. Those changes instead create 'mootness' issues and trigger that doctrine's more forgiving rules." *Fox v. Saginaw Cty.* 67 F.4th 284, 295 (6th Cir. 1992.).

{¶ 21} As a general rule, courts will not resolve issues that are moot. *See Miner v. Witt*, 82 Ohio St. 237 (1910). "The doctrine of mootness is rooted both in the 'case' or 'controversy' language of Section 2, Article III of the United States Constitution and in the general notion of judicial restraint. . . . While Ohio has no

constitutional counterpart to Section 2, Article III, the courts of Ohio have long recognized that a court cannot entertain jurisdiction over a moot question." (Citations omitted.) *James A. Keller, Inc. v. Flaherty*, 74 Ohio App.3d 788, 791 (10th Dist. 1991). An action is moot when it becomes "'fictitious, colorable, hypothetical, academic or dead'" and involves "'no actual genuine, live controversy.'" *State ex rel. Cincinnati Enquirer v. Hunter*, 2014-Ohio-5457, ¶ 4, quoting *In re L.W.*, 2006-Ohio-644, ¶ 11 (10th Dist.).

{¶ 22} Farmers contends that Stewart's individual and class claims are moot because the valuation of his total-loss vehicle was fully resolved in a contractually binding and court-ordered appraisal that was ordered prior to Stewart seeking class certification and was fully completed prior to the trial court granting class certification. Where the named plaintiff's individual claim becomes moot before class certification, dismissal of the entire action, including the class claims, is required. *Fuller v. Univ. Hosps. Med. Group, Inc.*, 2021-Ohio-2518, ¶ 29 (8th Dist.), citing *FV-I, Inc. v. Townsend-Young*, 2020-Ohio-5184, ¶ 74 (8th Dist.), citing *Brunet v. Columbus*, 1 F.3d 390, 399 (6th Cir. 1993).

{¶ 23} In support, Farmers relies on a similar case in which a federal court, applying Ohio law, held that performance of contractual appraisal provisions mooted the underlying claims — *Urbassik v. Am. Family Mut. Ins. Co.*, 657 F.Supp.3d 1015 (N.D. Ohio 2023). In *Urbassik*, an insured under an automobile policy sued his insurer for allegedly failing to pay the actual cash value of his total-loss vehicle. According to the plaintiff, the insurance company breached the policy

by applying a "selling price adjustment," which plaintiff alleged violated Ohio law. The insurance company filed a motion to compel appraisal, seeking to enforce the appraisal provision provided in the policy. The court granted the motion, and following the appraisal process, the insurance company issued plaintiff payment in accordance with the policy. The plaintiff deposited the payment. The *Urbassik* Court determined that under the policy, the appraisal conclusively determined the amount payable to plaintiff, and thus the breach-of-contract action was now moot. *Id*. at 1022.

{¶ 24} Stewart and the trial court found *Urbassik* distinguishable because unlike the plaintiff in *Urbassik* who accepted and deposited the appraisal payment, Stewart did not cash Farmers' check. Stewart and the trial court contended that by not accepting or cashing the check, Stewart either rejected the award, or it did not moot the controversy between the parties. Both Stewart and the court classified Farmers' issuance of the payment from the appraisal as "a settlement offer and refused to accept the additional payment." However, Farmers did not issue the payment as a "settlement offer," it was issued as contractually mandated under the policy.

{¶ 25} Stewart and the trial court focused on caselaw applying a "pickoff" exception to the mootness doctrine in class action contexts. The trial court cited *Deposit Guar. Natl. Bank, Jackson, Miss v. Roper*, 445 U.S. 326 (1980), for the proposition that "[t]o deny the right to appeal simply because the defendant has

sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration." *Id.* at 327.

{¶ 26} Stewart relied on this court's decision in *Hoban*, 2004-Ohio-6115 (8th Dist.). In *Hoban*, the plaintiff sought class certification on a breach-of-contract action regarding credit card finance charges. During the proceedings, National City Bank unilaterally reversed the disputed charges and then moved for summary judgment, contending that plaintiff's breach-of-contract action was moot. The trial court granted summary judgment in favor of the bank, finding that the plaintiff no longer had a "case or controversy" and noted that because no class action certification was pending at the time, plaintiff's class claim became moot.

{¶ 27} Relying on *Deposit Guar.*, this court in *Hoban* reversed the trial court's decision, finding that notwithstanding the bank's reversal of the charges, there were "serious questions" as to whether the dispute was capable of repetition but could evade review. *Id.* at ¶ 23. Quoting *Woods v. Oak Hill Community Med. Ctr.*, 134 Ohio App.3d 261 (4th Dist. 1999), this court stated that "'in situations where a pending motion for class action is pursued with reasonable diligence, the class action will not be mooted by a defendant's efforts to "pick off" claims of the named plaintiffs by tendering the relief sought.'" *Id.* at ¶ 14, quoting *Woods* at 269.

{¶ 28} In *Hoban*, this court stated that plaintiff did not have a reasonable opportunity to file a motion for certification before the bank reversed the charges. Finding that the dispute was capable of repetition, thus applying an exception to the mootness doctrine, this court further noted that although the bank made a blanket

assertion that plaintiff would not be responsible for any charges subsequently imposed, the bank did not rebuke its underlying policy of charging finance charges. *Id*. at ¶ 23. Accordingly, the court found that the mootness doctrine did not apply in this context.

{¶ 29} Stewart also relied on *Wilson v. Directions Credit Union*, 2024-Ohio-105 (6th Dist.), that determined that attempts to "pick off" class representatives and claims prior to seeking class certification will not moot those cases. In *Wilson*, the plaintiff brought an action "on behalf of herself and a class of similarly situated individuals" against the credit union alleging that it breached its contract with its members by charging overdraft fees on checking account transactions for which customers had adequate funds in their accounts at the time the credit union authorized the transactions. A few months after the lawsuit was filed, the credit union credited plaintiff's account, reversing the fees, and then moved to dismiss the complaint for lack of jurisdiction, contending that the controversy was now moot. The trial court agreed and dismissed the action. On appeal, the Sixth District reversed, finding that the credit union's conduct of unilaterally depositing funds into the plaintiff's account was an attempt to "pick off" plaintiff's claims and thus, this conduct did not moot her individual or class claims. *Id*. at ¶ 19-20.

{¶ 30} But unlike *Hoban* and *Wilson*, the payment Farmers tendered was not issued as a means of a "settlement offer" or a unilateral attempt to circumvent class claims. Rather, the payment was issued as a result of a binding contractual provision in the policy that was previously enforced by a court order. Significantly,

the trial court specifically found that the policy required the parties to submit to the binding appraisal process. Moreover, Stewart did not seek to legally declare the policy appraisal provision unenforceable or ask that the appraisal award be set aside once the award was issued. *See, e.g., One Church v. Bhd. Mut. Ins. Co.*, 2024-Ohio-1601 (10th Dist.) (grounds to set aside an appraisal award); *Miller v. Mgt. Recruiters Intl., Inc.*, 2009-Ohio-236 (8th Dist.) (setting aside an arbitration award can only be done in limited circumstances).[4] Accordingly, the appraisal process and subsequent payment was not a "settlement offer" or attempt to "pick off" plaintiffs, but a fulfillment of contractual obligation as agreed to by the parties.

{¶ 31} The trial court relied on the plain language of the policy when it ordered Stewart to undergo the appraisal process. Applying that same plain language, the policy also renders the appraisal award binding. And because the subsequent appraisal payment represents payment for the "actual cash value" for his vehicle — what Stewart claimed Farmers did not pay him — there can be no

---

[4] "Generally, a court will not interfere with an appraisal award but, to the contrary, will indulge in every reasonable presumption to sustain it in the absence of fraud, mistake, or misfeasance. A court will not substitute its judgment for that of the appraisers or set aside an award for inadequacy or excessiveness unless it is so palpably wrong as to indicate corruption or bias on the part of the appraisers." *Lakewood Mfg. Co. v. Home Ins. Co. of New York*, 422 F.2d 796, 798 (6th Cir.1970), citing 44 American Jurisprudence 2d, Insurance, Section 1719 (1969). "The law of Ohio, applicable here, is essentially in line with the general rule. In Ohio, fraud or manifest mistake is a proper legal basis upon which to set aside an appraisal award." *Id.*, citing *Baltimore & Ohio RR. v. Stankard*, 56 Ohio St. 224, 46 N.E. 577 (1897).

*One Church* at ¶ 19-20.

breach and thus the controversy no longer exists. Farmers performed under the contract by issuing the check for the amount. Stewart's not cashing or accepting the check does not change this result.

{¶ 32} Stewart and the trial court also focused on the two recognized exceptions to the mootness doctrine — cases involving issues capable of repetition, yet evading review, and cases involving a matter of great public or general interest. *Gajewski v. Bd. of Zoning Appeals*, 2008-Ohio-5270, ¶ 22 (8th Dist.). Stewart contends that these two exceptions apply, thus allowing his claims to move forward.

{¶ 33} A court may hear an appeal that is otherwise moot when the issues raised are "capable of repetition, yet evading review." *State ex rel. Plain Dealer Publishing Co. v. Barnes*, 38 Ohio St.3d 165 (1988), paragraph one of the syllabus. The "capable of repetition, yet evading review" exception to the mootness doctrine "applies only in exceptional circumstances in which the following two factors are both present: (1) the challenged action is too short in its duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *State ex rel. Calvary v. Upper Arlington*, 89 Ohio St.3d 229, 231 (2000).

{¶ 34} We find that this is not the exceptional case where the issues evade review. The issue of whether application of the condition adjustment breaches an insurance policy when calculating payment for a total loss vehicle is capable of repetition. However, the circumstances surrounding the case before us is premised on timing, procedural maneuvers, and rulings that could be challenged in

subsequent proceedings. Accordingly, under different circumstances, individual and class claims on this issue may survive the mootness doctrine.

{¶ 35} Moreover, we recognize that the underlying issue — whether an insurer applying line-item adjustments when calculating payment for total loss under an automobile insurance policy — is currently pending in the Ohio Supreme Court. *See 11/12/2025 Case Announcements*, 2025-Ohio-5078, accepting *Davenport v. Progressive Direct Ins.*, 2025-1102 (Propositions of Law I and II). In *Davenport*, the second proposition of law reads: "A putative class cannot satisfy [Civ.R.] 23's predominance requirement by alleging that only a single adjustment to an insurance valuation process is flawed when liability for class members' claims turns on the undervaluation of insured property." *Id.* The resolution of that case will lend guidance and resolve the issue in Ohio that many other courts have faced across the nation.

{¶ 36} Additionally, "'although a case may be moot with respect to one of the litigants, the court may hear the appeal where there remains a debatable constitutional question to resolve, or where the matter appealed is one of great public or general interest.'" *State ex rel. White v. Koch*, 2002-Ohio-4848, ¶ 16, quoting *Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28 (1987), paragraph one of the syllabus. This court has observed:

> On rare occasions, the court may retain an otherwise moot action for determination when it involves an issue of great public importance so that the question can be properly determined on its merits. *See McDuffie v. Berzzarins* (1975), 43 Ohio St.2d 23, 330 N.E.2d 667. Ordinarily, however, it is only the highest court of the state that adopts

this procedure rather than a court whose decision does not have binding effect over the entire state.

*Harshaw v. Farrell*, 55 Ohio App.2d 246, 251 (8th Dist. 1977).

{¶ 37} In this case, a constitutional question does not exist, and we find that the matter appealed is not one of great public or general interest. As previously stated, the overall issue is currently pending in the Ohio Supreme Court in *Davenport.*

{¶ 38} For the foregoing reasons, this court finds merit to Farmers' first assignment of error. Because the appraisal award was binding on both parties after being invoked and Farmers' tendering payment to Stewart, representing the actual cash value for Stewart's vehicle, there was no longer a live controversy between the parties. Accordingly, because Stewart's individual claims were resolved prior to class certification, dismissal of the entire action, including the class claims, was required. The trial court erred in failing to find the claims moot and dismiss the action. Farmers' first assignment of error is sustained.

{¶ 39} Finding merit to Farmers' first issue raised in its assignment of error renders the other two issues, challenging the trial court's decision granting and certifying the class, moot. *See generally* App.R. 12(A)(1)(c).

{¶ 40} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
DEENA R. CALABRESE, J., CONCUR